## In re ROSETT et al.

### (District Court, S. D. New York. February 6, 1913.)

BANKS AND BANKING (§ 15*)—PRIVATE BANKER—SECURITIES—DEPOSIT—PERSONS ENTITLED TO BENEFIT.

New York General Business Law (Laws 1911, c. 393), § 25, declares that, except as provided in section 29d, no individual or partnership shall receive deposits for safe-keeping or transmission without first having obtained a license from the Comptroller, and that such license shall not authorize transaction of business at any place other than that described in the certificate except with the written approval of the Comptroller. Section 29d provides that the foregoing provisions shall not apply to any individual or partnership who would otherwise be required to file a bond in the sum of $100,000 with the Comptroller, where the business is conducted in a city having a population of one million or over, etc. *Held*, that where the bankrupt transacted business of a private banker at its principal office in New York City, and maintained branch banks in New Jersey, Pennsylvania, and Ohio, the branches were each subject to the laws of the particular state in which they were located and not to the laws of New York, and hence only New York depositors were solely entitled to the $100,000 deposited with the Comptroller in New York.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 12–17; Dec. Dig. § 15.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Morris Rosett and Max Rosett individually and composing the firm of M. Rosett. On review of referee's order providing for distribution of a fund deposited by the bankrupts with the Comptroller of the state of New York and denying a motion for declaration of a dividend. Reversed.

Samuel Hoffman, of New York City (Archibald Palmer and Alexander I. Hahn, both of New York City, of counsel), for petitioners.

Thomas Carmody, Atty. Gen., of the State of New York, John J. Dwyer, Deputy Atty. Gen., and Olcott, Gruber, Bonynge & McManus, of New York City (Irving L. Ernst, of New York City, of counsel), for trustee.

HOLT, District Judge. This is a petition to review an order of a referee in bankruptcy, holding that all the creditors of the bankrupts who had deposited money with them for safe-keeping or transmission to others were entitled to share in a fund of $100,000 deposited by the bankrupts with the Comptroller of the state of New York, and denying a motion that a dividend be declared.

The bankrupts were private bankers, doing business under the style of M. Rosett. Their principal business office was at 197 Stanton street, New York. They also had offices or so-called branch banks at Perth Amboy and Jersey City, N. J., Wilkes-Barre, Pennsylvania, and Youngstown, Ohio. They also had an office at 114 Liberty street, New York, where a set of books was kept. At the end of each day a statement of the day's business at each branch office was sent to the office at 114 Liberty street, New York, and complete accounts kept

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

there of the entire business. At each office outside of New York, as often as the money on hand exceeded $1,500, the surplus was sent to the firm at New York. If any amount was demanded by depositors at such outside offices in excess of the amount on hand, it was sent there from New York.

On September 16, 1910, the bankrupts deposited with the Comptroller of the state of New York New York city bonds of the value of $100,000, pursuant to the provisions of the General Business Law of New York in relation to private banking. By section 25 of that act (Laws 1911, c. 393) it is provided that, except as provided in section 29d, no individual or partnership shall engage in the business of receiving deposits of money for safe-keeping or for the purpose of transmission to another without first having obtained from the Comptroller a license to engage in such business. The same section provides that such license shall not authorize the transaction of business at any place other than that described in the license certificate, except with the written approval of the Comptroller. The licensee is required to cause such license certificate to be posted and conspicuously displayed in the place of business for which it is issued, and makes it unlawful to post it upon other premises. The same section further provides for depositing a bond varying in amount according to the amount of business done from $5,000 to $50,000, or equivalent money or securities with the Comptroller, and that:

"The money and securities deposited with the Comptroller as herein provided and the money which in case of default shall be paid on the aforesaid bond by any applicant or the surety thereof, shall constitute a trust fund for the benefit of the depositors of the licensee and of such persons as shall deliver money to such licensee for transmission to another, and such beneficiaries shall be entitled to an absolute preference as to such money or securities over all general creditors of the licensee."

Section 29d provides as follows:

"The foregoing provisions shall not apply * * * to any individual or partnership who would otherwise be required to comply with section twenty-five of this article who shall file with the Comptroller a bond in the sum of one hundred thousand dollars, approved by the Comptroller as to form and sufficiency, for the purpose and conditioned as in said section prescribed, where the business is conducted in a city having a population of one million or over and if conducted elsewhere in the state such bond shall be in the sum of fifty thousand dollars; or in lieu thereof money or securities approved by the Comptroller of the same amount. The provisions of section twenty-nine a shall be applicable to such bond, or deposit of money or securities."

Under this last provision the bankrupts deposited $100,000 in bonds with the Comptroller. The Comptroller has turned the bonds over to the trustee in bankruptcy, who holds their proceeds for distribution. Certain New York creditors claim that the fund should be distributed among those persons who deposited money for safe-keeping or transmission in New York, and that the creditors who deposited moneys for such purpose in New Jersey, Pennsylvania, and Ohio are not entitled to share in such fund. The Attorney General of New York has appeared and filed a brief in support of this claim. The referee held that the fund should be distributed ratably among all

such creditors without regard to the question whether their deposits were made in New York or in New Jersey, Pennsylvania, and Ohio.

The question involved is not free from difficulty. The fact that most of the deposits made at the branch banks were immediately sent to the bankrupts at New York seems, at first view, to create a strong equity in favor of the depositors in the branch banks. It is claimed that the $100,000 deposited with the Comptroller was derived in whole or in part from such remittances, but in my opinion the evidence on that question is not sufficient to determine what the fact is in that respect. The depositors in the branch banks generally knew that they were branches of the New York house. The bankrupts advertised in a Jewish almanac, which was circulated to some extent in the places where the branch banks were located, that they had deposited $100,000 with the Comptroller of New York to secure their depositors, and it seems probable that some at least of the depositors in the branch banks knew of the $100,000 deposited with the Comptroller, and that that fact influenced them in depositing in the branch banks.

On the other hand, these so-called branch banks were, as to the public at least, separate businesses. The bankrupts simply did business as private bankers in five places. Each of those businesses was governed by the law of the state in which it was carried on. A license was required by the law of New Jersey and was taken out there. No bond or security was required there. The law of New Jersey required that the bank examiner should be satisfied that a private banker's assets exceeded his liabilities by $20,000. The examiner, after an investigation, became satisfied that the bankrupts were worth $20,000 over their liabilities, and issued a license to them. In Pennsylvania no law required any license or security from a person engaging in the business of a private banker. In Ohio the law required a bond for $5.000. That bond was given, and an Ohio license obtained by the bankrupts. They were thereupon authorized to do business in New Jersey, Pennsylvania, and Ohio by the laws of those states, respectively. They had no authority to do business in those states by the law of New York. If the state of New York had undertaken to grant them authority to do business in those states, such grant would have been nugatory. In fact, the entire law of New York concerning private bankers seems to me to indicate only a purpose to protect persons living or doing business in this state, over whom alone it could rightfully exercise jurisdiction. The law requires a license; that the license certificate state the place of business; that no private banking business shall be transacted in any other place; that the license is to be conspicuously posted in such place of business and nowhere else; and that the money or securities deposited or collected under the bond given shall be a trust fund for the depositors of the licensee. If the bankrupts had applied to have inserted in the license as their place of business Jersey City, or Wilkes-Barre, or Youngstown, the Comptroller would have refused, of course, to do so. If they had posted their license from New York in one of their branch offices in another state, they would have violated the law under which it was issued.

The depositors of the licensee for whose benefit the money deposited is a trust fund are those depositors whom it was the duty of the state which issued the license to protect, and not depositors in other states whom it had no authority to protect. So the provision of section 29d, exempting bankers who deposit $100,000 from the other provisions of the act, point only to a business done in the state of New York. The bond is to be $100,000, "where the business is conducted in a city having a population of one million or over, and if conducted elsewhere in the state such bond shall be in the sum of fifty thousand dollars, or in lieu thereof money or securities approved by the Comptroller." It is impossible, in my opinion, that these provisions can apply to a business done in any city of less than 1,000,000 population outside of the state.

Aside from any close verbal scrutiny of the statute, it seems to me that on general principles the result is the same. Each state exercises authority over and owes a duty of protection to those within its jurisdiction. It can exercise no such authority, and it owes no such duty to those without its jurisdiction. Those persons who did business with the bankrupts in New Jersey, Pennsylvania, and Ohio must look to the law of those states for their protection. In my opinion the New York creditors are not protected by the $5,000 bond given in Ohio, at least as long as there are creditors in Ohio; and the Ohio creditors are not protected by the money deposited with the New York Comptroller, so long as there are creditors in New York.

The question whether a dividend to all general creditors should be now declared depends on the provisions of section 65 of the Bankruptcy Act. The $100,000 fund should be distributed to the New York depositors without further delay. If no dividend has been declared, and there is a large enough amount on hand to pay a dividend of 5 per cent., or if there has been a dividend and there is enough to pay a dividend of 10 per cent., it should be declared without waiting for a sale of the real estate.

My conclusion is that the $100,000 fund should be distributed among the New York depositors, and that a dividend should be paid at once if there are sufficient funds to do so in conformity with section 65 of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448]).